IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| PETER WILLIAMS, )<br>    *Petitioner*, )<br>        v. )<br>ENVIRONMENTAL PROTECTION )<br>AGENCY, LEE M. ZELDIN, )<br>Administrator, in his official capacity, )<br>    *Respondents*. ) | No. __26-1021_____ |

## PETITION FOR REVIEW

Pursuant to FED. R. APP. P. 15(a), D.C. Circuit Rule 15, 42 U.S.C. §7607(b)(1), and 5 U.S.C. §706(1) ("compel agency action unlawfully withheld"), petitioner Peter Williams petitions this Court for review of respondent Environmental Protection Agency and its Administrator (collectively, "EPA") the final EPA actions and constructively final inaction in EPA's Notice, *Phasedown of Hydrofluorocarbons: Notice of 2026 Allowance Allocations for Production and Consumption of Regulated Substances Under the American Innovation and Manufacturing Act of 2020, and Notice of Final Actions Establishing Administrative Consequences*, 90 Fed. Reg. 52,391 (Nov. 20, 2025). (Exhibit A). Williams files this action protectively, as a precautionary measure, to preserve his right to judicial review if this Court is deemed the proper forum and the challenged EPA action and inaction are sufficiently final for review in this Court.

This petition is timely filed within the 60 days allowed by Section 307(b)(1),

42 U.S.C. §7607(b)(1), for the Federal Register notice dated November 20, 2025. *See* 90 Fed. Reg. at 52,398. As explained below, the accompanying Federal Register notice is the first final EPA action with respect to Williams' application that EPA has published in the Federal Register, assuming *arguendo* that the EPA employee (Cynthia Newberg) who signed the Federal Register notice had the Administrator's delegated authority to act for EPA.

Venue is proper in this Court because Section 307(b)(1) directs review in this Court of final agency action that is "nationally applicable" or based on the agency's published determination of "nationwide scope or effect." 42 U.S.C. § 7607(b)(1). EPA made such a finding in the accompanying notice. *See* 90 Fed. Reg. at 52,398.

Williams files this petition for review protectively to the extent that EPA's action in issuing hydrofluorocarbons ("HFCs") allocations for calendar 2026 would or could be deemed final EPA action—including without, limitation, constructively final action, *Friedman v. FAA*, 841 F.3d 537, 541-42 (D.C. Cir. 2016) ("practical effect" of inaction constitutes a "constructive denial"), or ratification of past action by subordinate EPA staff—on Williams' long-pending application to participate in EPA's HFC program under 40 C.F.R. pt, 84. EPA's action if final with respect to whether EPA will grant HFC allocations to Williams in the main release of 2026 allocations. To the extent that EPA's action relies on 40 C.F.R. §84.11(b)(1), EPA's action denies Williams' rulemaking petition dated May 16, 2025, to amend or repeal

the 2023 amendments to 40 C.F.R. §84.11(b)(1).

To the extent that Newberg has been delegated the Administrator's authority to take final action on the Administrator's behalf, this Court would have jurisdiction over not only that final action but also any "preliminary, procedural, or intermediate agency action" by subordinate EPA officers and any otherwise nonfinal action taken as part of the final EPA action. See 5 U.S.C. §704; *NRDC v. Wheeler*, 103, 955 F.3d 68, 78 (D.C. Cir. 2020).

Notwithstanding the dismissal of prior Williams-EPA disputes in this Court, *res judicata* principles to do apply for several reasons.

- First, *res judicata* is an equitable defense, and EPA lacks the requisite "clean hands" to raise that defense, based on EPA's fraudulent and unlawful conduct with respect to Williams' application:
  1. Through counsel, EPA not only materially misrepresented that EPA staff who acted on Williams' application in March-April of 2022 had been delegated the Administrator's authority to act for EPA but also actively suppressed that the issue by seeking to avoid certifying a record and by failing to correct EPA's prior material misrepresentations upon becoming aware of those misrepresentation, assuming *arguendo* that the initial material but false representations were made inadvertently.
  2. Until May 12, 2025, EPA did not disclose to Williams the basis for denying

his HFC application, and that delayed disclosure violated 5 U.S.C. §555(e) and thus tolled the running of the 60-day window for judicial review, with the accompanying Federal Register notice's being the first subsequent potentially relevant Federal Register notice that could start the running of the 60-day window for judicial review.

3. In the process that culminated in the former Assistant Administrator for Air and Radiation's letter dated November 8, 2024, EPA staff unlawfully withheld relevant documents—including two of the four then-pending administration petitions, one of which was addressed to the Assistant Administrator himself—from the record and from EPA's consideration, in violation of 18 U.S.C. §§1001(a)(1), 1512(c)(1)-(2), 1519, as well as 18 U.S.C. §208(a) with respect to Newberg.

4. With respect to Williams' efforts to resolve his dispute with EPA, EPA staff admitted to withholding action on his administrative efforts because he petitioned this Court for review, EPA Resp. in Opp'n to Pet'r Peter Williams's Mandamus Pet., at 27-28 (Nov. 17, 2023), *In re Williams*, No. 23-1269 (D.C. Cir.) (document #2027599), in violation of 5 U.S.C. §555(b) and the First Amendment and therefore also in violation of 18 U.S.C. §242.

- Second, Williams never has had a "full and fair" opportunity to litigate his dispute with EPA because—whether by design, inadvertence, or both—the

various EPA agents, officers, and employees involved in these matters have concealed the material fact that the 2022-era actions with respect to Williams' application were taken by subordinate EPA staff without the Administrator's delegated authority, which EPA has steadfastly sought to keep from this Court by avoiding the requirement of 5 U.S.C. §706 and 28 U.S.C. §2112(b) to make the whole record available, a record that would have shown to this Court and Williams that EPA staff lacked any delegation of authority to act in March-April of 2022.

- Third, even if EPA had taken final action on Williams' application, the Supreme Court's supervening decision in *Harrow v. Dep't of Def.*, 601 U.S. 480, 484 (2024), qualifies as a "change in [the] applicable legal context," *Bobby v. Bies*, 556 U.S. 825, 834 (2009) (cleaned up), *Montana v. United States*, 440 U.S. 147, 157-58 (1979) (prior judgment was conclusive "[a]bsent significant changes in controlling facts or legal principles" since the judgment), that makes *res judicata* inapposite here.

- Fourth, if the accompanying Federal Register notice constitutes final EPA action—including constructively final action—with respect to Williams' application, this new EPA action (a) provides Williams this opportunity to cure any prior defect in not advising this Court that EPA staff's prior actions were not final because the 2022 actions lacked the Administrator's delegated authority

and (b) is complete and thus final in a way that the prior Assistant Administrator for Air and Radiation's partial action dated November 8, 2024, was not final based on its responding to only two of four then-pending administrative petitions. *Bellsouth Corp. v. FCC*, 17 F.3d 1487, 1489-90 (D.C. Cir. 1994) ("an agency action cannot be considered nonfinal for one purpose and final for another").

For all these reasons—assuming *arguendo* that the accompanying Federal Register notice is final EPA action with respect to Williams' application—Williams deserves the opportunity to challenge the relevant EPA action in a full and fair hearing.

If the accompanying Federal Register notice is not final EPA action—actually or constructively—with respect to Williams' application under the HFC program, Williams respectfully requests that this Court transfer this action to the district court, 28 U.S.C. §1631, where Williams has an action pending, *Williams v. Newberg*, No. 1:24-cv-03471-RBW (D.D.C.), that does not yet include all the issues raised herein (*i.e.*, transfer to the district court would not be redundant).

Dated: January 20, 2026              Respectfully submitted,

                                                   /s/ Lawrence J. Joseph
                                          Lawrence J. Joseph
                                            1250 Connecticut Ave., NW, Ste. 700
                                            Washington, DC 20036
                                            Tel: 202-899-2987
                                            Email: ljoseph@larryjoseph.com

                                            *Counsel for Petitioner*

## **EXHIBIT A**

TABLE 3—REGISTRANTS REQUESTING VOLUNTARY CANCELLATION—Continued

| Company No. | Company name and address |
|---|---|
| 102474 | Liaoning Zhonghui Biotechnology Co., Ltd., Agent Name: Reach24H USA, Inc., 11921 Freedom Drive, Suite 550, Reston, VA 20190. |

### III. Provisions for Disposition of Existing Stocks

Existing stocks are those stocks of registered pesticide products that are currently in the United States, and that were packaged, labeled, and released for shipment prior to the effective date of the cancellation, which will be the date of publication of the cancellation order in the **Federal Register**. In any order issued in response to these requests, EPA anticipates including the following provisions for the treatment of any existing stocks of the products listed in Unit II:

For voluntary cancellations of the registrations listed in Table 1 of Unit II, registrants will be permitted to sell and distribute existing stocks of voluntarily canceled products for 1 year after the effective date of the cancellation order in the **Federal Register**. Thereafter, registrants will be prohibited from selling or distributing the products identified in Table 1 of Unit II, except for export consistent with FIFRA section 17 (7 U.S.C. 136o) or for proper disposal.

For the products identified in Table 1A of Unit II, the registrants have requested 18-months after the date of publication of the cancellation order in the **Federal Register** to sell existing stocks. Thereafter, the registrants will be prohibited from selling or distributing the products identified in Table 1A of Unit II, except for export consistent with FIFRA section 17 (7 U.S.C. 136o) or for proper disposal.

Once EPA has approved labels for the products listed in Table 2 of Unit II, (amended to reflect the requested amendments to terminate uses), registrants will be permitted to sell or distribute products under the previously approved labeling for a period of 18 months after the date of publication of the cancelation order in the **Federal Register**, unless other restrictions have been imposed. Thereafter, registrants will be prohibited from selling or distributing the products whose labels include the terminated uses identified in Table 2 of Unit II, except for export consistent with FIFRA section 17 (7 U.S.C. 136o) or for proper disposal.

Persons other than the registrant will generally be allowed to sell, distribute, or use existing stocks of the canceled products and/or products whose labels include the terminated uses until supplies are exhausted, provided that such sale, distribution, or use is consistent with the terms of the previously approved labeling on, or that accompanied, the canceled products and/or terminated uses.

Authority: 7 U.S.C. 136 et seq.

Dated: November 12, 2025.

**Charles Smith,**
*Director, Registration Division, Office of Pesticide Programs.*

[FR Doc. 2025–20400 Filed 11–19–25; 8:45 am]
**BILLING CODE 6560–50–P**

---

## ENVIRONMENTAL PROTECTION AGENCY

[EPA–HQ–OAR–2021–0669; FRL–9116–07–OAR]

### Phasedown of Hydrofluorocarbons: Notice of 2026 Allowance Allocations for Production and Consumption of Regulated Substances Under the American Innovation and Manufacturing Act of 2020, and Notice of Final Actions Establishing Administrative Consequences

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Notice.

**SUMMARY:** The Environmental Protection Agency (EPA) has issued calendar year 2026 allowances for the production and consumption of hydrofluorocarbons in accordance with the Agency's regulations. This issuance of allowances is undertaken pursuant to the American Innovation and Manufacturing (AIM) Act, which directs EPA by October 1 of each calendar year to determine the quantity of production and consumption allowances for the following calendar year. In this notice, EPA is also providing notice of separate Agency actions taken to establish administrative consequences for specific entities. These previously finalized actions withheld, retired, or revoked the identified entities' newly issued calendar year 2026 allowances in accordance with the administrative consequence regulatory provisions.

**FOR FURTHER INFORMATION CONTACT:** Connor Henderson, U.S. Environmental Protection Agency, Stratospheric Protection Division, telephone number: 202–564–2177; email address: *henderson.connor@epa.gov*. You may also visit EPA's website at *https://www.epa.gov/climate-hfcs-reduction* for further information.

**SUPPLEMENTARY INFORMATION:**
Subsection (e)(2)(D)(i) of the American Innovation and Manufacturing Act of 2020 (AIM Act) directs the Environmental Protection Agency (EPA) to determine, by October 1 of each calendar year, the quantity of allowances for the production and consumption of regulated substances that may be used for the following calendar year. EPA has codified the production and consumption baselines and phasedown schedules for regulated substances in 40 CFR 84.7. Under the phasedown schedule, for 2026, total production allowances may not exceed 229,521,263 metric tons of exchange value equivalent (MTEVe) and total consumption allowances may not exceed 181,522,990 MTEVe.

EPA regulations at 40 CFR part 84, subpart A, outline the process by which the Agency determines the number of allowances each entity is allocated. EPA allocated allowances consistent with the regulatory requirements and has posted entity-specific allowance allocations on its website. An allowance allocated under the AIM Act does not constitute a property right and is a limited authorization for the production or consumption of a regulated substance. EPA also tracks information on how those allowances are used. Reported information for calendar year 2024 HFC activity, including how many allowances were used and total U.S. production and consumption of HFCs in 2024, can be found on EPA's website in its HFC Data Hub. Both allowance allocations and the HFC Data Hub can be found by visiting *https://www.epa.gov/climate-hfcs-reduction.*

Note that while allowances may be transferred or conferred once they are allocated, they can only be expended to cover imports and production in the calendar year for which they are allocated. In other words, calendar year 2026 allowances may only be expended for production and import of bulk HFCs between January 1, 2026, and December 31, 2026.

**Application-Specific Allowances**

EPA established the methodology for issuing application-specific allowances in the 2021 final rule titled *Phasedown of Hydrofluorocarbons: Establishing the Allowance Allocation and Trading Program Under the American Innovation and Manufacturing Act* (86 FR 55116, October 5, 2021) and updated this methodology in the final rule titled *Phasedown of Hydrofluorocarbons: Review and Renewal of Eligibility for Application-Specific Allowances* (90 FR 41676, August 26, 2025), hereinafter referred to as the HFC Allocation Framework Rule and the 2025 Application-specific Allowance Review and Renewal Rule, respectively. The methodology for application-specific allowance allocations is codified in 40 CFR 84.13. Because application-specific allowances can be expended to either produce or import HFCs, and application-specific allowances must be provided from within the overall annual production and consumption caps, EPA subtracts the amount of application-specific allowances allocated from both the production and consumption general allowance pools. EPA issues application-specific allowances to end users in four applications: propellants in metered dose inhalers (MDIs), structural composite preformed polyurethane foam for marine use and trailer use, etching of semiconductor material or wafers and the cleaning of chemical vapor deposition chambers within the semiconductor manufacturing sector, and onboard aerospace fire suppression. Additionally, EPA issues application-specific allowances to the U.S. Department of Defense for mission-critical military end uses.

Applying the methodology codified in 40 CFR 84.13, EPA allocated the number of application-specific allowances shown in Table 1.

TABLE 1—NUMBER OF CALENDAR YEAR 2026 APPLICATION-SPECIFIC ALLOWANCES ALLOCATED PER ENTITY

| Entity | Application | Application-specific allowances allocated (MTEVe) |
|---|---|---:|
| Analog Devices | Semiconductors | 16,065.3 |
| Applied Materials | Semiconductors | 4,476.7 |
| Armstrong Pharmaceuticals | Propellants in MDIs | 226,695.0 |
| AstraZeneca Pharmaceuticals | Propellants in MDIs | 2,677.0 |
| Aurobindo Pharma USA | Propellants in MDIs | 19,740.6 |
| Compsys | Structural Composite Preformed Polyurethane Foam | 6,768.9 |
| Diodes Incorporated | Semiconductors | 1,409.7 |
| General Electric | Semiconductors | 469.9 |
| GlaxoSmithKline | Propellants in MDIs | 407,370.6 |
| GlobalFoundries | Semiconductors | 127,914.9 |
| Google | Semiconductors | 947.2 |
| Hitachi High-Tech America | Semiconductors | 474.1 |
| IBM Corporation | Semiconductors | 407.9 |
| Intel Corporation | Semiconductors | 479,420.4 |
| Invagen Pharmaceuticals | Propellants in MDIs | 268,017.4 |
| Jireh Semiconductor | Semiconductors | 2,396.6 |
| Keysight Technologies | Semiconductors | 493.9 |
| Kindeva Drug Delivery | Propellants in MDIs | 653,490.0 |
| LA Semiconductor | Semiconductors | 1,879.6 |
| Lam Research Corp. | Semiconductors | 39,779.4 |
| Lupin | Propellants in MDIs | 13,680.8 |
| Medtronic Tempe Campus | Semiconductors | 316.2 |
| Microchip Technology | Semiconductors | 12,003.2 |
| Micron Technology | Semiconductors | 168,032.3 |
| Newport Corporation | Semiconductors | 1,879.7 |
| Newport Fab DBA TowerJazz | Semiconductors | 16,977.0 |
| Northrop Grumman Corporation | Semiconductors | 3,611.2 |
| NXP Semiconductor | Semiconductors | 47,105.1 |
| Polar Semiconductor | Semiconductors | 10,818.8 |
| Qorvo Texas | Semiconductors | 939.8 |
| Renesas Electronics America | Semiconductors | 1,409.7 |
| Samsung Austin Semiconductor | Semiconductors | 284,285.0 |
| Seagate Technologies | Semiconductors | 939.9 |
| Semiconductor Components Industries DBA ON Semiconductor. | Semiconductors | 14,216.1 |
| SkyWater Technology | Semiconductors | 21,420.4 |
| Skyworks Solutions | Semiconductors | 1,031.7 |
| Taiwan Semiconductor Manufacturing Company Arizona Corporation (TSMC Arizona Corporation). | Semiconductors | 218,957.1 |
| Texas Instruments | Semiconductors | 483,341.1 |
| The Research Foundation for The State University of New York at NY CREATES. | Semiconductors | 5,568.0 |
| Tokyo Electron U.S. Holdings | Semiconductors | 2,973.8 |
| Tower Semiconductor San Antonio | Semiconductors | 15,542.2 |
| TSMC Washington | Semiconductors | 17,944.6 |
| UC San Diego | Semiconductors | 418.4 |
| Wolfspeed | Semiconductors | 14,074.8 |
| X–FAB Texas | Semiconductors | 1,168.6 |
| Department of Defense | Mission-critical Military End Uses | 6,156,958.5 |

TABLE 1—NUMBER OF CALENDAR YEAR 2026 APPLICATION-SPECIFIC ALLOWANCES ALLOCATED PER ENTITY—Continued

| Entity | Application | Application-specific allowances allocated (MTEVe) |
|---|---|---|
| Total Issued | All | 9,776,509.1 |

EPA's 2025 Application-specific Allowance Review and Renewal Rule established an annual set-aside of 1,000,000 MTEVe allowances to accommodate unforeseen HFC needs resulting from a global pandemic, other public health emergency, or other healthcare system need (referred hereafter as the ''MDI set-aside''). EPA has set aside 1,000,000 MTEVe allowances for that purpose from both the consumption and production pools. Entities that use HFCs as a propellant in MDIs have until April 30, 2026, to apply for these allowances. Once the deadline passes, EPA will evaluate such requests and expects to issue allowances within 60 days. EPA also intends to distribute any remaining set-aside allowances pro rata amongst general pool allowance holders within 60 days of the April 30 request date. For more information, see the 2025 Application-specific Allowance Review and Renewal Rule and 40 CFR 84.15.

**General Pool Allowances**

EPA's 2023 final rule titled *Phasedown of Hydrofluorocarbons: Allowance Allocation Methodology for 2024 and Later Years* (88 FR 46836, July 20, 2023) updated the methodology for how the Agency would issue production and consumption allowances for 2024 through 2028 for general pool allowance holders. These updates are codified in 40 CFR 84.9 (production) and 40 CFR 84.11 (consumption), and EPA has issued allowances to entities who meet the criteria in the regulations, including those who were previously issued consumption allowances as new market entrants pursuant to 40 CFR 84.15.

EPA also created a new form of allowances called ''production for export allowances'' in the 2025 Application-specific Allowance Review and Renewal Rule. In accordance with the provisions codified in that rule at 40 CFR 84.18, prior to issuing general pool production allowances, EPA allocated 3,000 MTEVe production for export allowances to Iofina Chemical.

EPA allocated the number of production allowances shown in Table 2.

TABLE 2—NUMBER OF CALENDAR YEAR 2026 PRODUCTION ALLOWANCES ALLOCATED PER ENTITY

| Entity | Production allowances allocated (MTEVe) |
|---|---|
| Arkema | 26,394,276.4 |
| Chemours | 48,932,709.1 |
| Iofina Chemical | 1,135.0 |
| Mexichem Fluor | 32,640,740.2 |
| Solstice Advanced Materials US (formerly known as Honeywell International) | 110,772,893.2 |
| Application-specific allowances ª | 9,776,509.1 |
| Application-specific allowances: MDI set-aside | 1,000,000.0 |
| Production for export allowances | 3,000.0 |
| Total Issued | 229,521,263.0 |

ª See Table 1; this value corresponds to the total number of application-specific allowances allocated on October 1, 2025.

EPA allocated the number of consumption allowances shown in Table 3.

TABLE 3—NUMBER OF CALENDAR YEAR 2026 CONSUMPTION ALLOWANCES ALLOCATED PER ENTITY

| Entity | Consumption allowances allocated (MTEVe) |
|---|---|
| A.C.S. Reclamation & Recovery (Absolute Chiller Services) | 125,381.8 |
| Ability Refrigerants | 125,381.8 |
| ACT Commodities | 48.8 |
| Advance Auto Parts | 448,322.0 |
| Advanced Specialty Gases | 178,956.2 |
| AFK & Co. | 121,204.0 |
| AFS Cooling | 125,381.8 |
| A-Gas | 2,138,290.8 |
| Air Liquide USA | 312,690.4 |
| American Air Components | 125,381.8 |
| Arkema | 19,491,306.2 |
| Artsen | 644,517.8 |
| Automart Distributors DBA Refrigerant Plus | 125,381.8 |
| AutoZone Parts | 1,267,547.9 |
| AW Product Sales & Marketing | 75,811.5 |

TABLE 3—NUMBER OF CALENDAR YEAR 2026 CONSUMPTION ALLOWANCES ALLOCATED PER ENTITY—Continued

| Entity | Consumption allowances allocated (MTEVe) |
|---|---:|
| Bluon | 20,986.9 |
| CC Packaging | 121,620.4 |
| Chemours | 21,497,110.1 |
| Chemp Technology | 125,381.8 |
| ChemPenn | 13,942.0 |
| ComStar International | 226,011.0 |
| Cross World Group | 125,381.8 |
| Daikin America | 1,957,524.9 |
| EDX Industry | 360,516.6 |
| Electronic Fluorocarbons | 65,412.6 |
| Fireside Holdings DBA American Refrigerants | 125,368.3 |
| First Continental International | 482,861.3 |
| FluoroFusion Specialty Chemicals | 1,601,010.8 |
| Freskoa USA | 125,381.8 |
| GlaxoSmithKline | 337,629.4 |
| Golden Refrigerant | 125,381.8 |
| Harp USA | 480,186.8 |
| Hudson Technologies | 2,111,566.7 |
| Hungry Bear | 125,381.8 |
| ICool USA | 2,136,951.2 |
| IGas Holdings | 16,375,867.0 |
| Iofina Chemical | 793.5 |
| Kidde-Fenwal | 125,381.8 |
| Lenz Sales & Distribution | 696,419.3 |
| Lina Trade | 125,381.8 |
| Linde | 334,002.4 |
| Matheson Tri-Gas | 21,400.2 |
| MEK Chemical Corporation | 52,074.8 |
| Meraki Group | 125,381.8 |
| Metalcraft | 100,932.4 |
| Mexichem Fluor | 15,981,606.3 |
| Mondy Global | 199,900.8 |
| National Refrigerants | 12,423,316.0 |
| Nature Gas Import and Export | 514,088.5 |
| North American Refrigerants | 125,381.8 |
| O23 Energy Plus | 125,381.8 |
| Perfect Score Too DBA Perfect Cycle | 23,744.8 |
| Reclamation Technologies | 374,891.6 |
| Resonac America | 41,653.2 |
| RGAS | 2,994,850.6 |
| RMS of Georgia | 1,033,726.5 |
| Sciarra Laboratories | 5,454.1 |
| SDS Refrigerant Services | 125,381.8 |
| Solstice Advanced Materials US (formerly known as Honeywell International) | 51,651,108.1 |
| Solvay Fluorides | 691,489.3 |
| Summit Refrigerants | 125,381.8 |
| SynAgile Corporation | 705.3 |
| Technical Chemical | 2,142,020.8 |
| TradeQuim | 125,381.8 |
| Transocean Offshore Deepwater Drilling | 10.5 |
| Tulstar Products | 460,452.4 |
| Tyco Fire Products | 125,381.8 |
| USSC Acquisition Corp | 82,407.8 |
| Walmart | 1,430,437.4 |
| Waysmos USA | 351,724.6 |
| Wego Chemical Group | 35,472.3 |
| Weitron | 3,975,564.6 |
| Wesco HMB | 125,381.8 |
| Wilhelmsen Ships Service | 25,335.2 |
| Application-specific allowances[a] | 9,776,509.1 |
| Application-specific allowances: MDI set-aside | 1,000,000.0 |
| Total Issued | 181,522,990.0 |

[a] See Table 1; this value corresponds to the total number of application-specific allowances allocated.

**Administrative Consequences**

Separate from the allocation of calendar year 2026 allowances, EPA hereby provides notice that it also took final actions establishing administrative consequences for specific entities. Each action, which EPA took through a letter issued to the relevant entity, is a separate final action informing the recipient entity of an administrative consequence. The requirements pertaining to administrative consequences are codified in 40 CFR 84.35. Under this provision, EPA can retire, revoke, or withhold the allocation of allowances, or ban an entity from receiving, transferring, or conferring allowances. A retired allowance is one that must go unused and expire at the end of the year; a revoked allowance is one that EPA takes back from an allowance holder and redistributes to all the other eligible allowance holders; and a withheld allowance is one that is retained by the Agency until an allowance holder that has failed to meet a regulatory requirement comes back into compliance, at which point EPA allocates it to the allowance holder. More information on EPA's approach to administrative consequences can be found at 86 FR 55168.

EPA finalized administrative consequences for certain entities that were allocated application-specific allowances, listed in Table 1 for calendar year 2026. These entities failed to submit either their auditing reports as required in 40 CFR 84.33 or their application-specific allowance holder biannual report(s) as required in 40 CFR 84.31(h)(1) and therefore EPA has withheld a portion of their allowances (if allowances were allocated to the entity) and will continue withholding these allowances until the missing reports are submitted and subsequently verified by EPA: Guardian Protective Devices, Odin Pharmaceuticals, Proteng Distribution, and Wolfspeed. These final actions became effective on September 30, 2025, and are summarized below in Table 4.

TABLE 4—SUMMARY OF ADMINISTRATIVE CONSEQUENCES TAKEN PURSUANT TO 40 CFR 84.35 FOR CALENDAR YEAR 2026 APPLICATION-SPECIFIC ALLOWANCES, EFFECTIVE SEPTEMBER 30, 2025

| Entity | Number of affected allowances (MTEVe) | Administrative consequence action | Reasoning |
|---|---|---|---|
| Guardian Protective Devices [a]. | 0.0 | Withhold | Failure to submit calendar year 2024 application-specific allowance holders biannual reports as required in 40 CFR 84.31(h)(1). |
| Odin Pharmaceuticals [a] | 0.0 | Withhold | Failure to submit calendar year 2024 application-specific allowance holders biannual reports as required in 40 CFR 84.31(h)(1). |
| Proteng Distribution [a] | 0.0 | Withhold | Failure to submit calendar year 2024 application-specific allowance holders biannual reports as required in 40 CFR 84.31(h)(1). |
| Wolfspeed | 2,815.0 | Withhold | Failure to submit auditing report as required in 40 CFR 84.33. |

[a] The entity was not allocated calendar year 2026 application-specific allowances and as a result no allowances could be withheld.

EPA finalized administrative consequences for certain entities that were allocated consumption allowances, as listed in Table 3 for calendar year 2026. These final actions affecting calendar year 2026 allowances became effective on September 30, 2025. Specifically, the following entity failed to submit auditing reports as required in 40 CFR 84.33 and therefore EPA has withheld a portion of their consumption allowances until the missing reports are filed and verified by EPA: MEK Chemical Corporation. The following entities imported regulated HFCs without expending the requisite number of consumption allowances at the time of import and therefore EPA has retired and/or revoked consumption allowances commensurate with the quantities of regulated substances imported without allowances: IGas Holdings, Matheson Tri-Gas, Inc., and Wilhelmsen Ships Service. A summary of these administrative consequences is included in Table 5.

TABLE 5—SUMMARY OF ADMINISTRATIVE CONSEQUENCES PURSUANT TO 40 CFR 84.35 FOR CALENDAR YEAR 2026 CONSUMPTION ALLOWANCES, EFFECTIVE SEPTEMBER 30, 2025

| Entity | Number of affected allowances (MTEVe) | Administrative consequence action | Reasoning |
|---|---|---|---|
| IGas Holdings [a] | 78,551.8 | Revoke | Imported regulated HFCs without expending requisite number of allowances. |
| Matheosn Tri-Gas, Inc. [a] | 6,249.1 | Revoke | Imported regulated HFCs without expending requisite number of allowances. |
| MEK Chemical Corporation | 10,415.0 | Withold | Failure to submit auditing report as required in 40 CFR 84.33. |
| Wilhelmsen Ships Service [a] | 1,486.7 | Retire | |
| | 743.4 | Revoke | Imported regulated HFCs without expending requisite number of allowances. |

[a] As stated in the HFC Allocation Framework Rule (86 FR 55116, Oct. 5, 2021), EPA explained it would take a 50% premium in first instances of administrative consequences. This value corresponds to 50% of the full amount of consumption without requisite allowances at the time of import.

In addition to the administrative consequences listed in Tables 4 and 5 that were finalized in the past year, 62,674.8 MTEVe of consumption allowances were retired and 982,654.4 MTEVe were revoked, consistent with administrative consequences finalized in prior years and described in *Phasedown of Hydrofluorocarbons: Notice of 2024 Allowance Allocations for Production and Consumption of Regulated Substances Under the American Innovation and Manufacturing Act of 2020, and Notice of Final Administrative Consequences* (88 FR 72060, Oct. 19, 2023), hereafter referred to as the 2024 Notice of HFC Allowance Allocations. The entities subject to those prior year actions include American Air Components, Bluon, Honeywell International (now known as Solstice Advanced Materials US), and Resonac America.

**Adjustments to Application-Specific Allowances**

As described above, certain entities listed in Table 1 have had a portion of their calendar year 2026 allowances withheld for not submitting the auditing report required in 40 CFR 84.33 or their calendar year 2024 application-specific allowance holder biannual report(s) as required in 40 CFR 84.31(h)(1). These allowances will be withheld until the missing reports are submitted and subsequently verified by EPA. Accordingly, Table 7 shows the number of application-specific allowances available to each entity as a result of finalized administrative consequences.

TABLE 7—NUMBER OF CALENDAR YEAR 2026 APPLICATION-SPECIFIC ALLOWANCES AVAILABLE TO EACH ENTITY AS OF OCTOBER 1, 2025, ADJUSTED FOR ADMINISTRATIVE CONSEQUENCES

| Entity | Application | Available application-specific allowances, adjusting for administrative consequences (MTEVe) |
|---|---|---:|
| Analog Devices | Semiconductors | 16,065.3 |
| Applied Materials | Semiconductors | 4,476.7 |
| Armstrong Pharmaceuticals | Propellants in MDIs | 226,695.0 |
| AstraZeneca Pharmaceuticals | Propellants in MDIs | 2,677.0 |
| Aurobindo Pharma USA | Propellants in MDIs | 19,740.6 |
| Compsys | Structural Composite Preformed Polyurethane Foam | 6,768.9 |
| Diodes Incorporated | Semiconductors | 1,409.7 |
| General Electric | Semiconductors | 469.9 |
| GlaxoSmithKline | Propellants in MDIs | 407,370.6 |
| GlobalFoundries | Semiconductors | 127,914.9 |
| Hitachi High-Tech America | Semiconductors | 947.2 |
| Google | Semiconductors | 474.1 |
| IBM Corporation | Semiconductors | 407.9 |
| Intel Corporation | Semiconductors | 479,420.4 |
| Invagen Pharmaceuticals | Propellants in MDIs | 268,017.4 |
| Jireh Semiconductor | Semiconductors | 2,396.6 |
| Keysight Technologies | Semiconductors | 493.9 |
| Kindeva Drug Delivery | Propellants in MDIs | 653,490.0 |
| LA Semiconductor | Semiconductors | 1,879.6 |
| Lam Research Corp | Semiconductors | 39,779.4 |
| Lupin | Propellants in MDIs | 13,680.8 |
| Medtronic Tempe Campus | Semiconductors | 316.2 |
| Microchip Technology | Semiconductors | 12,003.2 |
| Micron Technology | Semiconductors | 168,032.3 |
| Newport Corporation | Semiconductors | 1,879.7 |
| Newport Fab DBA TowerJazz | Semiconductors | 16,977.0 |
| Northrop Grumman Corporation | Semiconductors | 3,611.2 |
| NXP Semiconductor | Semiconductors | 47,105.1 |
| Polar Semiconductor | Semiconductors | 10,818.8 |
| Qorvo Texas | Semiconductors | 939.8 |
| Renesas Electronics America | Semiconductors | 1,409.7 |
| Samsung Austin Semiconductor | Semiconductors | 284,285.0 |
| Seagate Technologies | Semiconductors | 939.9 |
| Semiconductor Components Industries DBA ON Semiconductor. | Semiconductors | 14,216.1 |
| SkyWater Technology | Semiconductors | 21,420.4 |
| Skyworks Solutions | Semiconductors | 1,031.7 |
| Taiwan Semiconductor Manufacturing Company Arizona Corporation (TSMC Arizona Corporation). | Semiconductors | 218,957.1 |
| Texas Instruments | Semiconductors | 483,341.1 |
| The Research Foundation for The State University of New York at NY CREATES. | Semiconductors | 5,568.0 |
| Tokyo Electron U.S. Holdings, Inc | Semiconductors | 2,973.8 |
| Tower Semiconductor San Antonio | Semiconductors | 15,542.2 |
| TSMC Washington | Semiconductors | 17,944.6 |
| UC San Diego | Semiconductors | 418.4 |
| Wolfspeed | Semiconductors | 11,259.8 |
| X–FAB Texas | Semiconductors | 1,168.6 |
| Department of Defense | Mission-critical Military End Uses | 6,156,958.5 |
| Total Available | All | 9,773,694.1 |

**Adjustments to Consumption Allowances**

An entity is eligible to receive redistributed allowances if they were not subject to administrative consequences that took effect on the same day (except entities that had allowances withheld). For example, if EPA revoked 50 MTEVe allowances from company A and 50 MTEVe allowances from company B, effective on the same day, EPA's redistribution of that single pool of 100 MTEVe allowances would go to all general pool allowances holders except company A and company B. This applies regardless of whether the revocation happens in one year or over multiple years. However, entities who only had allowances withheld by the Agency, *e.g.,* as a result of failure to comply with the auditing requirements as contained in 40 CFR 84.33, were eligible to receive allowances that were redistributed.

For 2026, the total number of revoked and redistributed allowances is 1,068,198.7 MTEVe, which are being apportioned to eligible consumption allowance holders based on their relative market share, and the total number of retired allowances in 2026 is 64,161.5 MTEVe. These amounts are the result of administrative consequences with various effective dates. For more information on the administrative consequences finalized in 2023 that impact calendar year 2026 consumption allowances, see the 2024 Notice of HFC Allowance Allocations (88 FR 72060, Oct. 19, 2023).

Table 8 reflects 2026 consumption allowance totals available to each entity as of October 1, 2025, after taking into account the administrative consequences and eligibility described elsewhere in this notice.

TABLE 8—TOTAL NUMBER OF CALENDAR YEAR 2026 CONSUMPTION ALLOWANCES AVAILABLE TO EACH ENTITY AS OF OCTOBER 1, 2025, ADJUSTED FOR ADMINISTRATIVE CONSEQUENCES

| Entity | Available consumption allowances, adjusted for all administrative consequences (MTEVe) |
|---|---:|
| A.C.S. Reclamation & Recovery (Absolute Chiller Services) | 126,509.1 |
| Ability Refrigerants | 126,509.1 |
| ACT Commodities | 49.2 |
| Advance Auto Parts | 452,352.8 |
| Advanced Specialty Gases | 180,565.2 |
| AFK & Co | 121,271.2 |
| AFS Cooling | 126,509.1 |
| A-Gas | 2,157,516.0 |
| Air Liquide USA | 315,501.7 |
| American Air Components [a] | 68,133.1 |
| Arkema | 19,666,550.9 |
| Artsen | 644,875.1 |
| Automart Distributors DBA Refrigerant Plus | 126,509.1 |
| AutoZone Parts | 1,278,944.3 |
| AW Product Sales & Marketing | 76,493.1 |
| Bluon [a] | 0.0 |
| CC Packaging | 122,713.9 |
| Chemours | 21,690,388.8 |
| Chemp Technology | 126,509.1 |
| ChemPenn | 14,067.3 |
| ComStar International | 228,043.1 |
| Cross World Group | 126,509.1 |
| Daikin America | 1,975,124.9 |
| EDX Industry | 363,757.9 |
| Electronic Fluorocarbons | 65,448.9 |
| Fireside Holdings DBA American Refrigerants | 126,495.5 |
| First Continental International | 487,202.7 |
| FluoroFusion Specialty Chemicals | 1,601,898.3 |
| Freskoa USA | 126,509.1 |
| GlaxoSmithKline | 340,665.0 |
| Golden Refrigerant | 126,509.1 |
| Harp USA | 484,504.1 |
| Hudson Technologies | 2,130,551.6 |
| Hungry Bear | 126,509.1 |
| ICool USA | 2,156,164.3 |
| IGas Holdings | 16,435,471.8 |
| Iofina Chemical | 800.6 |
| Kidde-Fenwal | 126,509.1 |
| Lenz Sales & Distribution | 702,680.7 |
| Lina Trade | 126,509.1 |
| Linde | 337,005.3 |
| Matheson Tri-Gas | 15,331.6 |
| MEK Chemical Corporation | 42,128.0 |
| Meraki Group | 126,509.1 |
| Metalcraft | 101,839.8 |
| Mexichem Fluor | 16,125,295.6 |
| Mondy Global | 201,698.1 |
| National Refrigerants | 12,535,012.9 |
| Nature Gas Import and Export | 518,710.7 |

TABLE 8—TOTAL NUMBER OF CALENDAR YEAR 2026 CONSUMPTION ALLOWANCES AVAILABLE TO EACH ENTITY AS OF OCTOBER 1, 2025, ADJUSTED FOR ADMINISTRATIVE CONSEQUENCES—Continued

| Entity | Available consumption allowances, adjusted for all administrative consequences (MTEVe) |
|---|---|
| North American Refrigerants | 126,509.1 |
| O23 Energy Plus | 126,509.1 |
| Perfect Score Too DBA Perfect Cycle | 23,958.3 |
| Reclamation Technologies | 378,262.2 |
| Resonac America [a] | 0.0 |
| RGAS | 3,021,777.1 |
| RMS of Georgia | 1,043,020.6 |
| Sciarra Laboratories | 5,503.1 |
| SDS Refrigerant Services | 126,509.1 |
| Solstice Advanced Materials (formerly known as Honeywell International) [a] | 50,754,403.0 |
| Solvay Fluorides | 697,706.4 |
| Summit Refrigerants | 126,509.1 |
| SynAgile Corporation | 711.7 |
| Technical Chemical | 2,161,279.6 |
| TradeQuim | 126,509.1 |
| Transocean Offshore Deepwater Drilling | 10.6 |
| Tulstar Products | 464,592.3 |
| Tyco Fire Products | 126,509.1 |
| USSC Acquisition Corp | 83,148.7 |
| Walmart | 1,443,298.3 |
| Waysmos USA | 354,887.0 |
| Wego Chemical Group | 35,791.3 |
| Weitron | 4,011,308.5 |
| Wesco HMB | 126,509.1 |
| Wilhelmsen Ships Service | 23,318.8 |
| Application-specific allowances [b] | 9,773,694.1 |
| Application-specific allowances: MDI set-aside | 1,000,000.0 |
| Total Available | 181,445,598.5 |

[a] While these entities were eligible for revoked and redistributed consumption allowances with an effective date of September 30, 2025, the Agency has previously finalized administrative consequences for them stating that "[EPA] [w]ill retire and/or revoke allowances until the full administrative consequence is covered," (88 FR 72060, Oct. 19, 2023).

[b] See Table 7; this value corresponds to the total number of application-specific allowances available on October 1, 2025, after adjusting for administrative consequences.

**Judicial Review**

The AIM Act provides that certain sections of the Clean Air Act (CAA) "shall apply to" the AIM Act and actions "promulgated by the Administrator of [EPA] pursuant to [the AIM Act] as though [the AIM Act] were expressly included in title VI of [the CAA]." 42 U.S.C. 7675(k)(1)(C). Among the applicable sections of the CAA is section 307, which includes provisions governing judicial review. 42 U.S.C. 7607(b)(1). Section 307(b)(1) provides, in part, that petitions for review must only be filed in the United States Court of Appeals for the District of Columbia Circuit: (i) When the agency action consists of "nationally applicable regulations promulgated, or final actions taken, by the Administrator," or (ii) when such action is locally or regionally applicable, but "such action is based on a determination of nationwide scope or effect and if in taking such action the Administrator finds and publishes that such action is based on such a determination."

The issuance of calendar year 2026 allowances for the production and consumption of hydrofluorocarbons herein noticed is "nationally applicable" within the meaning of CAA section 307(b)(1). The AIM Act imposes a national cap on the total number of allowances available for each year for all entities nationwide. 42 U.S.C. 7675(e)(2)(B)–(D). For 2025, there was a national pool of 229,521,263 production allowances and 181,522,990 consumption allowances available to distribute. The allocation action noticed herein distributed that finite set of allowances consistent with the methodology EPA established in the nationally applicable framework rule. As such, the allowance allocation is the division and assignment of a single, nationwide pool of HFC allowances to entities across the country according to the uniform, national methodology established in EPA's regulations. Each entity's allowance allocation is a relative share of that pool; thus, any additional allowances awarded to one entity directly affects the allocations to others. For these reasons, the final action of the Agency allocating hydrofluorocarbon allowances to entities located throughout the country is nationally applicable.

Under section 307(b)(1) of the CAA, petitions for judicial review of this allocation action must be filed in the United States Court of Appeals for the District of Columbia Circuit by January 20, 2026.

As described, in this notice EPA is also publishing notice of adjudicatory actions establishing administrative consequences that were previously taken effective September 30, 2025. Under section 307(b)(1) of the CAA, any petition for judicial review of such a final action must be filed in the United States Court of Appeals for the appropriate circuit by January 20, 2026.

Filing a petition for reconsideration by the Administrator does not affect the finality of any action noticed herein for purposes of judicial review nor does it extend the time within which a petition for judicial review may be filed and

shall not postpone the effectiveness of such action. The final actions described herein may not be challenged later in proceedings to enforce their requirements. 42 U.S.C. 7607(b)(2).

**Cynthia Newberg,**
*Director, Stratospheric Protection Division.*
[FR Doc. 2025–20439 Filed 11–19–25; 8:45 am]
**BILLING CODE 6560–50–P**

# EXPORT-IMPORT BANK

## Notice for the Request of Applications: 2026–2027 EXIM Advisory Committees

*Time and Date:* Wednesday, November 19th–Friday, December 19th, 2025.

*Status:* The Export-Import Bank of the United States (EXIM) is accepting applications for the 2026–2027 EXIM Advisory Committee and Sub-Saharan Africa Advisory Committee from November 19–December 19, 2025.

Candidates wishing to be considered for membership must submit an application here *https://www.exim.gov/leadership-governance/advisory-committees* and include the following:

- Statement of interest showing relevant knowledge, experience, and qualifications (500 words max)
- Resume
- Brief professional biography
- High-resolution headshot

Completed application materials must be submitted by December 19, 2025.

### Advisory Committee

The Advisory Committee provides guidance to EXIM on its policies and programs, in particular on the extent to which EXIM provides competitive financing to support American jobs through exports.

### Sub-Saharan Africa Advisory Committee

The Sub-Saharan Africa Advisory Committee provides advice on EXIM policies and programs designed to support the expansion of financing support for U.S. manufactured goods and services in Sub-Saharan Africa.

*Contact Person for More Information:* For more information about applying for membership to any of the committees, please contact India Walker at advisory@exim.gov.

*Authority:* The Committee was established by the Bank as directed by Section 2(b)(9) of the Export Import Bank Act of 1945. This Advisory Committee is chartered in accordance with the Federal Advisory Committee Act ("FACA"), 5 U.S.C. App.

**India Walker,**
*Deputy Vice President, Office of External Affairs.*
[FR Doc. 2025–20434 Filed 11–19–25; 8:45 am]
**BILLING CODE 6690–01–P**

# FEDERAL COMMUNICATIONS COMMISSION

[OMB 3060–1104, OMB 3060–0717, OMB 3060–0419, OMB 3060–0126, OMB 3060–1203, OMB 3060–0289 and OMB 3060–0433; FR ID 318214]

## Information Collections Being Submitted for Review and Approval to Office of Management and Budget

**AGENCY:** Federal Communications Commission.

**ACTION:** Notice and request for comments.

**SUMMARY:** As part of its continuing effort to reduce paperwork burdens, as required by the Paperwork Reduction Act (PRA) of 1995, the Federal Communications Commission (FCC or the Commission) invites the general public and other Federal Agencies to take this opportunity to comment on the following information collection. Pursuant to the Small Business Paperwork Relief Act of 2002, the FCC seeks specific comment on how it might "further reduce the information collection burden for small business concerns with fewer than 25 employees." The Commission may not conduct or sponsor a collection of information unless it displays a currently valid Office of Management and Budget (OMB) control number. No person shall be subject to any penalty for failing to comply with a collection of information subject to the PRA that does not display a valid OMB control number.

**DATES:** Written comments and recommendations for the proposed information collection should be submitted on or before December 22, 2025.

**ADDRESSES:** Comments should be sent to *www.reginfo.gov/public/do/PRAMain*. Find this particular information collection by selecting "Currently under 30-day Review—Open for Public Comments" or by using the search function. Your comment must be submitted into *www.reginfo.gov* per the above instructions for it to be considered. In addition to submitting in *www.reginfo.gov* also send a copy of your comment on the proposed information collection to Nicole Ongele, FCC, via email to *PRA@fcc.gov* and to *Nicole.Ongele@fcc.gov*. Include in the comments the OMB control number as shown in the **SUPPLEMENTARY INFORMATION** below.

**FOR FURTHER INFORMATION CONTACT:** For additional information or copies of the information collection, contact Nicole Ongele at (202) 418–2991. To view a copy of this information collection request (ICR) submitted to OMB: (1) go to the web page *http://www.reginfo.gov/public/do/PRAMain,* (2) look for the section of the web page called "Currently Under Review," (3) click on the downward-pointing arrow in the "Select Agency" box below the "Currently Under Review" heading, (4) select "Federal Communications Commission" from the list of agencies presented in the "Select Agency" box, (5) click the "Submit" button to the right of the "Select Agency" box, (6) when the list of FCC ICRs currently under review appears, look for the Title of this ICR and then click on the ICR Reference Number. A copy of the FCC submission to OMB will be displayed.

**SUPPLEMENTARY INFORMATION:** As part of its continuing effort to reduce paperwork burdens, as required by the Paperwork Reduction Act (PRA) of 1995 (44 U.S.C. 3501–3520), the FCC invited the general public and other Federal Agencies to take this opportunity to comment on the following information collection. Comments are requested concerning: (a) Whether the proposed collection of information is necessary for the proper performance of the functions of the Commission, including whether the information shall have practical utility; (b) the accuracy of the Commission's burden estimates; (c) ways to enhance the quality, utility, and clarity of the information collected; and (d) ways to minimize the burden of the collection of information on the respondents, including the use of automated collection techniques or other forms of information technology. Pursuant to the Small Business Paperwork Relief Act of 2002, Public Law 107–198, see 44 U.S.C. 3506(c)(4), the FCC seeks specific comment on how it might further reduce the information collection burden for small business concerns with fewer than 25 employees.

*OMB Control Number:* 3060–1104.
*Title:* Section 73.682(d), DTV Transmission and Program System and Information Protocol ("PSIP") Standards.
*Form Number:* N/A.
*Type of Review:* Extension of currently approved collection.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to FED. R. APP. P. 26.1 and Circuit Rule 26.1, petitioner Peter Williams is a natural person, for whom no corporate disclosure is required.

Dated: January 20, 2026					Respectfully submitted,

/s/ Lawrence J. Joseph
Lawrence J. Joseph

Law Office of Lawrence J. Joseph
1250 Connecticut Ave., NW, Ste. 700
Washington, DC 20036
Tel: 202-899-2987
Fax: 202-318-2254
Email: ljoseph@larryjoseph.com

*Counsel for Petitioner*

# CERTIFICATE OF SERVICE

I hereby certify that, on January 20, 2026, I have caused one true and correct copy of the foregoing document to be served on the following by certified mail, return receipt requested:

Hon. Pamela Jo Bondi
U.S. Attorney General
Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

Correspondence Control Unit
EPA Office of General Counsel
Ariel Rios Building (MC: 2310A)
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

Jeanine Ferris Pirro
United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20004

      /s/ Lawrence J. Joseph
      Lawrence J. Joseph